UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL E. SIMERMAN,<br><br>                     *Plaintiff,*<br><br>      v.<br><br>MVMT LABS, INC.,<br><br>                     *Defendant.* | 24 Civ. 9187<br><br>**COMPLAINT**<br><br>ECF Case<br><br>Jury trial demanded. |

Plaintiff Daniel E. Simerman, by his undersigned attorney, HILARY B. MILLER, ESQ., as and for his complaint against defendant MVMT Labs, Inc., respectfully shows:

**INTRODUCTORY STATEMENT**

*1.* In 2023, defendant, an internet start-up business, hired plaintiff to assist defendant with its financing, product design and go-to-market strategy. Under the parties' Agreement, defendant promised to pay plaintiff a share of the digital assets on defendant's decentralized blockchain network (MOVE tokens) to be issued by defendant, plus a monthly cash fee.

*2.* On November 22, 2024, without valid cause – and without prior notice or providing plaintiff with the opportunity to cure any purported default as required by the Agreement – defendant repudiated the Agreement and its duty to deliver the MOVE tokens to plaintiff. The tokens have commenced pre-market trading, and the share of tokens promised to plaintiff had a fair market value of $18,400,000 as of the date of this complaint. Plaintiff seeks recovery of the value of the tokens, together with attorneys' fees, interest and costs.

## JURISDICTION AND VENUE

*3.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

*4.* This Court has personal jurisdiction over defendant because defendant expressly consented to the jurisdiction of this Court in Section 16(a) of the MVMT Labs, Inc. Consulting Agreement dated as of June 1, 2023 (the "Agreement"), which provides, in pertinent part, as follows:

> Any action to enforce this Agreement or otherwise arising under or related hereto shall be brought only in a state or federal court sitting in New York County, New York.  Each of the parties hereby irrevocably consents to the personal jurisdiction of any such court with respect to any action involving this Agreement and waives any right of removal or defense of improper venue, inconvenient forum, or absence of personal jurisdiction to the maintenance of any such action or proceeding.

*5.* Defendant has transacted business in the State of New York, within the meaning of CPLR 302(a)(1), and personal jurisdiction is also based on such transaction of business.

*6.* Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and the parties' Agreement; in Section 16(a) of the Agreement, quoted above, the parties agreed that any suit, action or proceeding arising out of or relating to the Agreement shall be brought exclusively in courts located in New York County, which is entirely within this District.

*7.* Venue is also proper in this District because the claims arise in the Southern District of New York under 28 U.S.C. §§ 1391(b)(2) and 1391(c), and defendant transacted business in this District by, among other things, negotiating for plaintiff's services in this District.

*8.* The forum selection clause in the Agreement is valid, enforceable, and mandatory. The clause encompasses the claims asserted in this action because this action seeks recovery for breach of the Agreement.

*9.* All conditions precedent to the enforcement of the forum selection clause have been satisfied or have occurred.

## THE PARTIES

*10.* Plaintiff Daniel E. Simerman is a natural person who resides in the City of Stamford, Fairfield County, Connecticut.

*11.* Defendant is a Delaware corporation having its principal place of business in Middletown, New Castle County, Delaware.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

*12.* Plaintiff is an established expert in the design, marketing and go-to-market of decentralized computer networks and the principal author of key resource papers on this topic. He is widely known in the industry because of his roles in other large blockchain companies and successful "Web 3.0" startups, including IOTA, Shimmer and Mintify, as well as his early support and investment in The Tie.

*13.* Defendant is a decentralized computer network business start-up, incorporated in January 2023. Defendant was founded by two young entrepreneurs, then in their early 20s, Cooper Scanlon and Rushi Manche. Defendant's current system, called Movement, can be described as a Layer 2 public blockchain focused on bringing the Move language to Ethereum and other blockchain ecosystems.

*14.* Scanlon and Manche sought plaintiff out in early 2023 and ultimately met with plaintiff in Manhattan on each of April 11 and April 14, 2023, to discuss how to obtain funding for their business, how to optimize their product offering, how to manage and grow blockchain organizations at this scale, and the engagement of plaintiff's services on a compensated basis.

*15.* At that meeting, Cooper – who was still new to the industry and had little experience working on such a project – told plaintiff that he did not know much about his new role and was eager for the experience and expertise of plaintiff. He told plaintiff they wanted to have plaintiff's knowledge and experience to guide them, and also to have access to plaintiff's contacts and knowledge for fundraising.

*16.* Thereafter, plaintiff and defendant negotiated and entered into the Agreement. A true copy of the Agreement is annexed hereto as Exhibit "1."

*17.* In summary, under the Agreement, in return for 20 hours per week of plaintiff's non-exclusive consulting services, defendant agreed to pay plaintiff (a) $9,000 in cash per month, plus (b) a one-time grant of 0.4% of the tokens to be issued by defendant on its network, such transfer to occur at the time of the so-called "token generation event."

*18.* The tokens were fully earned upon execution of the Agreement, and plaintiff's right to the tokens was not conditioned upon any particular duration of engagement by defendant or volume of services rendered by plaintiff. While the tokens by their terms were to be subject to a standard market standoff or "lockup" provision, plaintiff's ownership was to be complete upon initial issuance of the tokens by defendant, without any vesting requirement.

*19.* At various times after June 2023, defendant experienced cash shortages and sought to reduce its cash payments to plaintiff, offering in exchange to reduce the required hours of work by plaintiff. At no point during these discussions did defendant suggest to plaintiff that plaintiff's entitlement to tokens would be adversely affected by these reductions in hours worked.

*20.* In fact, defendant did reduce its cash payments to plaintiff, ultimately to zero in October 2023; and plaintiff reduced his hours worked for defendant consistently with the reduced services demanded by defendant. Neither party suggested or agreed to any reduction in tokens.

*21.* Plaintiff duly performed all services requested by defendant.

*22.* At no time did defendant complain or object to the reduced hours being worked by plaintiff or assert any deficiencies in plaintiff's work.

*23.* On November 22, 2024, without prior notice or demand, defendant delivered a notice to plaintiff purporting to terminate his rights under the Agreement, including termination of plaintiff's rights to the tokens.

*24.* Pre-market trading in defendant's MOVE tokens commenced on or about November 28, 2024. The indicated value of the 0.4% of the tokens ($0.4\% \times 10{,}000{,}000{,}000$ total tokens at \$0.46 each) promised to plaintiff was \$18,400,000, valued as of the date of this complaint.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

25. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 24 above.

26. Defendant's purported termination of the Agreement constitutes an anticipatory repudiation and complete breach of the Agreement.

27. As a result of defendant's willful and intentional actions, plaintiff has been damaged in an amount not less than $18,400,000, or such other amount as will be proven at trial.

## SECOND CLAIM FOR RELIEF
### Attorneys' Fees

28. Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 27 above.

29. Under Section 10 of the Agreement, defendant is liable to plaintiff for all losses, damages, liabilities, costs and expenses, including attorneys' fees and other legal expenses, arising directly or indirectly from or in connection with any material breach by defendant of the Agreement.

30. Plaintiff seeks recovery of his attorneys' fees and disbursements incident to this action, in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that the Court:

1. Enter judgment in favor of plaintiff and against defendant for damages for breach of the Agreement in an amount not less than $18,400,000, or as the proof at trial will show;

2. Enter judgment awarding interest, attorneys' fees and costs to plaintiff; and

3. Order all such other and further relief, in law or in equity, to which plaintiff may be entitled, or which the Court deems just and proper.

Dated: December 2, 2024

_____
HILARY B. MILLER
(HM-4041)
500 West Putnam Avenue – Suite 400
Greenwich, Connecticut 06830-6096
(203) 587-7000
hilary@miller.net

*Attorney for Plaintiff*

C:\Users\Hilary B. Miller\Documents\Documents\Simerman, Daniel E\_MVMT Labs Inc._\Complaint.docx (December 2, 2024 at 17:11:00 Rev. 65)