UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL E. SIMERMAN,

                                Plaintiff,

                -against-

MVMT LABS, INC.,

                                Defendant.

Case No. 1:24-cv-09187 (JLR)

**<u>MEMORANDUM
OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

       Plaintiff Daniel E. Simerman ("Plaintiff") brings this action against Defendant MVMT Labs, Inc. ("Defendant"), seeking damages for Defendant's alleged breach of a consulting agreement for Plaintiff's services. *See generally* Dkt. 9 ("First Amended Complaint" or "FAC"). Defendant now moves to dismiss the FAC in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See* Dkt. 16. For the reasons that follow, Defendant's motion is DENIED.

<strong>BACKGROUND[1]</strong>

       Plaintiff is an "expert in the design, marketing and go-to-market planning and execution of decentralized computer networks." FAC ¶ 12. He is well known in this industry for his roles supporting and investing in several large blockchain companies and startups. *Id.*

---

[1] Unless otherwise noted, the following facts are drawn from the FAC, which the Court "constru[es] . . . liberally, accepting all factual allegations in the [FAC] as true, and drawing all reasonable inferences in . . . [P]laintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023) (quoting *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 121 (2d Cir. 2020)). The Court will also consider the MVMT Labs, Inc. Consulting Agreement that is attached to the FAC as Exhibit 1 (the "Agreement"). *See* Dkt. 9-1; FAC ¶ 16; *cf. United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may [also] consider . . . documents attached to the complaint as exhibits" and "documents incorporated by reference in" or "'integral' to the complaint." (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))).

"Defendant is a decentralized computer network business start-up" that was incorporated in January 2023 and "founded by two young entrepreneurs, then in their early 20s, Cooper Scanlon and Rushi Manche." *Id.* ¶ 13. "Defendant's current system, called Movement, can be described as a Layer 2 public blockchain focused on bringing the Move language to Ethereum and other blockchain ecosystems." *Id.*

On April 11 and April 14, 2023, Scanlon and Manche met with Plaintiff "to discuss how to obtain funding for their business, how to optimize their product offering, how to manage and grow blockchain organizations at this scale, and the engagement of [P]laintiff's services on a compensated basis." *Id.* ¶ 14. The parties subsequently negotiated and entered into a consulting agreement (the "Agreement"), effective June 1, 2023. *Id.* ¶¶ 4, 16; *see* Dkt. 9-1 ("Agreement") at 1, 10. The Agreement required Plaintiff to work twenty hours per week performing various consulting services broadly described in Exhibit A of the Agreement. *See* FAC ¶ 17; Agreement § 1, Ex. A. As compensation, Plaintiff was to receive a retainer of $9,000 per month, 0.4 percent of the cryptocurrency tokens minted by Defendant, and up to an additional 0.2 percent of the tokens minted by Defendant at a rate of 0.005 percent per "project" he completed. FAC ¶ 17; *see* Agreement § 2, Ex. B. The Agreement provides that the transfer of tokens would take place at the time of Defendant's "token generation event." FAC ¶ 17; *see* Agreement Ex. A.

"At various times after June 2023, [D]efendant experienced cash shortages and sought to reduce its cash payments to [P]laintiff, offering in exchange to reduce the required hours of work by [P]laintiff." FAC ¶ 22. Following the parties' discussions regarding this arrangement, Defendant "reduce[d] its cash payments to [P]laintiff, ultimately to zero in October 2023," and demanded fewer services from Plaintiff. *Id.* ¶ 23. Plaintiff, in turn, reduced his working hours "consistently with the reduced services demanded by

[D]efendant." *Id.* During their discussions, Defendant never suggested to Plaintiff that his "entitlement to tokens would be adversely affected by these reductions," *id.* ¶ 22, and "[n]either party suggested or agreed to any reduction in tokens," *id.* ¶ 23. "At no time did [D]efendant complain or object to the reduced hours being worked by [P]laintiff or assert any deficiencies in [his] work." *Id.* ¶ 25. Plaintiff maintains that he "duly performed all services requested by [D]efendant," *id.* ¶ 24, and completed a total of twenty-six "projects," *id.* ¶ 21, entitling him to compensation in the form of 0.53 percent of Defendant's tokens at launch, *id.* ¶¶ 21, 30.

"On November 22, 2024, without prior notice or demand, [D]efendant delivered a notice to [P]laintiff purporting to terminate his rights under the Agreement, including termination of [his] rights to the tokens," due to Plaintiff's alleged nonperformance. *Id.* ¶ 26; *see* Dkt. 18-1. Shortly thereafter, on December 9, 2024, Defendant had its token-generation event, at which time "[m]arket trading in [D]efendant's tokens, named 'MOVE,' commenced." FAC ¶ 27. Defendant issued a total of ten billion MOVE tokens that day, each valued at $1.04 by the close of business. *Id.* ¶¶ 28-29. Plaintiff asserts that "Defendant's purported termination of the Agreement constitutes an anticipatory repudiation and complete breach of the Agreement," *id.* ¶ 32, and seeks damages in the amount of $55,120,000, representing 0.53 percent of the value of all tokens issued at launch, plus attorneys' fees, *see id.* ¶¶ 30, 33, 36.

Plaintiff initiated this action on December 2, 2024, *see* Dkt. 1, and filed an amended complaint on December 14, 2024, *see* FAC. On January 17, 2025, Defendant moved to dismiss the FAC for failure to state a claim. *See* Dkt. 16; Dkt. 17 ("Br."). Plaintiff filed his opposition to Defendant's motion on January 28, 2025, *see* Dkt. 21 ("Opp."), and Defendant

filed a reply on February 4, 2025, *see* Dkt. 22 ("Reply").  On March 27, 2025, the Court stayed discovery pending resolution of the motion to dismiss.  *See* Dkt. 26.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *New Yorkers for Religious Liberty, Inc. v. City of New York*, 125 F.4th 319, 327 (2d Cir. 2024) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023)).  "Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023) (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)).

## DISCUSSION

The Agreement contains a choice-of-law provision providing that it "shall be governed in all respects by the laws of the State of Delaware."  *See* Agreement § 16(a).  To state a claim for breach of contract under Delaware law, a plaintiff must establish (1) "the existence of the contract, whether express or implied," (2) "the breach of an obligation imposed by that contract," and (3) "the resultant damage to the plaintiff."  *Givaudan SA v. Conagen Inc.*, 128 F.4th 485, 497 (2d Cir. 2025) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).  The parties dispute only the second prong, that is, whether Defendant breached an obligation under the Agreement.  Defendant contends that it did not breach the Agreement because its "duty of performance" — the transfer of the tokens — "never came due."  Br. at 9.  Specifically, Defendant argues that "Plaintiff does not allege he completed all

the [r]equired [s]ervices" described in the Agreement and "actually admits he completely

stopped performing" by not working twenty hours per week.  Br. at 10; *see id.* at 11.  In

response, Plaintiff maintains that the parties modified the Agreement to reduce his required

hours and services while leaving the token-based compensation provision in place.  FAC

¶¶ 22-23; *see* Opp. at 8-12.  Plaintiff alleges that he "duly performed all services requested by

[D]efendant" following the modification to the Agreement that continued to obligate

Defendant to transfer the tokens to him as compensation.  Opp. at 7 (quoting FAC ¶ 24).

According to Plaintiff, Defendant breached its obligation by terminating him shortly before

the token-generation event despite his full performance.  *Id.*; *see also* FAC ¶¶ 26-27, 32.

      The Court finds that Plaintiff has plausibly alleged a modification of the Agreement

that reduced Plaintiff's required hours and services without affecting the token-based

compensation provision.  Although the Agreement contains a clause requiring modifications

and waivers to be made in writing, *see* Agreement § 16(c), and no writing is expressly

referenced in the FAC, "it is settled law" in Delaware "that contract provisions deeming oral

modifications unenforceable can be waived orally or by a course of conduct just like any other

contractual provision," *Kelly v. DCC Tech. Holdings, Inc.*, 724 F. Supp. 3d 122, 146

(W.D.N.Y. 2024) (quoting *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1229 (Del. Ch.

2000)); *see Locus Techs. v. Honeywell Int'l Inc.*, 632 F. Supp. 3d 341, 353-54 (S.D.N.Y.

2022) ("Where there is a course of conduct showing that the parties to a contract in fact

agreed to change the terms of their relationship, Delaware courts have declined to enforce no-

non-written-modification provisions." (citing *Pepsi-Cola Bottling Co. of Asbury Park v.

Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972))); *accord PJT Holdings, LLC v. Costanzo*, --- A.3d

---, 2025 WL 1417531, at *23 n.163 (Del. Ch. May 15, 2025).  Accordingly, a plaintiff can

establish that a defendant waived a no-oral-modification provision by pleading the existence

of an oral modification and alleging "silence and conduct inconsistent with th[e] [written-modification] requirement." *CPC Mikawaya Holdings, LLC v. MyMo Intermediate, Inc.*, No. 2021-0707, 2022 WL 2348080, at *13 (Del. Ch. June 29, 2022).

Plaintiff has done so here. According to the FAC, the parties at least orally agreed to modify the Agreement by reducing Plaintiff's monthly cash compensation in exchange for requiring Plaintiff to work fewer hours and perform fewer services. FAC ¶¶ 22-23. Defendant's alleged conduct is both consistent with this purported modification and inconsistent with the Agreement's requirement that all modifications must be made in writing. Specifically, Plaintiff pleads that "[D]efendant did reduce its cash payments to [P]laintiff, ultimately to zero in October 2023," FAC ¶ 23; "[P]laintiff reduced his hours worked for [D]efendant consistently with the reduced services demanded by [D]efendant," *id.*; and "[a]t no time did [D]efendant complain or object to the reduced hours being worked by [P]laintiff or assert any deficiencies in [his] work," *id.* ¶ 25. This is sufficient at the pleading stage to establish the existence of an oral modification of the Agreement and a waiver of the Agreement's no-oral-modification provision. *See, e.g.*, *Simon Prop. Grp., L.P. v. Brighton Collectibles, LLC*, No. N21C-01-258, 2021 WL 6058522, at *4 (Del. Super. Dec. 21, 2021) (finding that plaintiff sufficiently pleaded waiver of no-oral-modification provision where parties allegedly orally agreed on revised payment arrangement and acted consistently with that arrangement); *CPC Mikawaya Holdings*, 2022 WL 2348080, at *12-14 (finding that plaintiff sufficiently pleaded waiver of no-oral-modification provision where parties allegedly orally agreed that plaintiff would forgo contractual rights in exchange for modified arrangement and parties acted consistently with that arrangement); *Good v. Moyer*, No. N12C-03-033, 2012 WL 4857367, at *6 (Del. Super. Oct. 10, 2012) (finding that "[p]laintiff's assertion that [defendant] subsequently modified the written agreement by providing part

6

performance is sufficient conceivably to demonstrate a modification based on conduct" despite provision prohibiting modifications).

It is true, as Defendant avers, that under Delaware Law, "[a]n oral waiver . . . 'must be of such specificity and directness that there is no doubt regarding the parties' intention to change the formally solemnized written contract." *CPC Mikawaya Holdings*, 2022 WL 2348080, at *13 (quoting *Symbiont.io, Inc. v. Ipreo Holdings, LLC*, No. 2019-0407, 2021 WL 3575709, at *52 (Del. Ch. Aug. 13, 2021)); *see* Reply at 8.  However, "waiver 'is a fact-intensive inquiry'" that "Delaware courts have been reluctant to decide . . . on the pleadings.'" *Kelly*, 724 F. Supp. 3d at 147 (quoting *CPC Mikawaya Holdings*, 2022 WL 2348080, at *13). Although the FAC may lack the more exacting detail regarding the circumstances and terms of the modification that would be required to survive a motion for summary judgment, it contains sufficient factual matter to survive a motion to dismiss: Plaintiff alleges that the parties modified the Agreement to reduce his required hours and services, that Plaintiff worked those hours and performed those services, and that Defendants failed to compensate him pursuant to the token-compensation provision that the parties left untouched.  These allegations, while relatively unembellished, are sufficient to plausibly allege an oral modification of the Agreement and Defendant's breach thereof.[2]  *See Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*, 868 F. Supp. 2d 333, 339 (D. Del. 2012) (finding that the defendant plausibly alleged oral modifications "regardless of any difficulty [he] might encounter in proving the[ir] existence" at later stages of litigation); *see also Kelly*, 724 F. Supp. 3d at 147 ("[W]here oral modification is alleged, it is reasonably conceivable that the

---

[2] Because Plaintiff's allegations are sufficient to plausibly allege a waiver of the no-oral-modification provision, the Court need not consider the email exchange between Plaintiff, Manche, and Scanlon, discussed and quoted in Plaintiff's opposition brief, that purportedly memorialized the parties' modification in writing.  *See* Opp. at 4 n.1.

parties also waived the no-oral-modification provision[.]" (citing *Good*, 2012 WL 4857367, at *6)).

In arguing that Plaintiff must carry a heightened burden to allege an oral waiver, Defendant cites to a handful of decisions where courts have dismissed breach-of-contract claims under Delaware law based on no-oral-modification provisions. *See* Reply at 7-9. However, only one of these cases, *Petra Mezzanine Fund, L.P. v. Willis*, was decided on a motion to dismiss, and this case is distinguishable. *See* No. 12-cv-00601, 2012 WL 5382944 (D. Del. Nov. 1, 2012). In *Petra Mezzanine Fund*, the court determined that the counterclaimant failed to state a claim for breach of contract based on an alleged oral modification of an agreement not only due to the presence of a no-oral-modification clause, but also because the modification lacked a material term regarding the date of payment, rendering it invalid. *Id.* at *2. Here, in contrast, Plaintiff alleges that the parties agreed to reduce Plaintiff's monthly stipend, weekly hours, and required services while leaving the remainder of the Agreement, including the date and amount of token compensation, in place.

In sum, the Court finds that Plaintiff has plausibly alleged that the parties orally modified the Agreement to reduce Plaintiff's required hours and services in exchange for a reduction in his monthly stipend, but not a reduction in token-based compensation. Because Plaintiff alleges that he fully performed his obligations under the modified agreement, he has adequately pleaded that Defendant breached the Agreement by purporting to terminate him for nonperformance prior to the token-generation event and failing to issue him the tokens. Accordingly, Plaintiff has stated a claim for breach of contract.[3]

---

[3] Defendant asserts that Plaintiff's claim for attorneys' fees, *see* FAC ¶¶ 34-36, should be dismissed because Plaintiff has not pleaded a breach of the Agreement, *see* Br. at 14, and further that Plaintiff "waived" his right to seek such fees because he did not address attorneys' fees in his brief in opposition to the motion to dismiss, *see* Reply at 9. Because Plaintiff has

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED.  No later than **July 2, 2025**, the parties shall submit (1) an amended Case Management Plan and Proposed Scheduling Order with revised dates for all discovery deadlines and (2) a joint letter advising the Court as to the parties' preference regarding referral to the SDNY mediation program or to the assigned magistrate judge for settlement purposes and the timing for such discussions.  *See* Dkt. 26 at 4.

The Clerk of Court is respectfully directed to terminate the pending motion at Dkt. 16.

Dated: June 25, 2025
        New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

---

stated a claim for breach of contract, and argued as such in his opposition brief, the Court will not dismiss Plaintiff's claim for attorneys' fees.